**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| DYNAPASS IP HOLDINGS LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | NO. 2:23-cv-0063-JRG-RSP |
| | § | (Lead Case) |
| AMAZON.COM, INC., | § | |
| | § | |
| *Defendant*. | § | |

**CLAIM CONSTRUCTION ORDER**

In these consolidated patent cases, Dynapass IP Holdings LLC alleges infringement of claims from U.S. Patent No. 6,993,658 by Amazon.com, Inc., The Charles Schwab Company, Experian Information Services, Inc., and Simmons Bank. The patent "relates to a system through which user tokens required for user authentication [for a secure computer system] are supplied through personal communication devices such as mobile phones and pagers." '658 Patent at 1:8–11.

The parties dispute the scope of five terms, all of which have been at issue in other litigation before the Court. *See generally* Cl. Constr. Order, Dkt. No. 144-1. Having considered the parties' briefing and arguments of counsel during a May 15, 2024 hearing, the Court resolves the disputes as follows.[1]

[1] Shortly before the hearing, Dynapass and Simmons Bank notified the Court of pending settlement. *See* Dkt. No. 157, Joint Motion to Stay All Deadlines & Notice of Settlement. As a result, Simmons Bank did not participate in the hearing.

# I. BACKGROUND

## A. U.S. Patent 6,993,658

The patent addresses a problem with the traditional use of a user ID and password for user authentication to a computer system. According to the patent:

> Guessing passwords is a frequent technique used by "hackers" to break into systems. Therefore, many systems impose regulations on password formats that require mixtures of letters of different cases and symbols and that no part of a password be a word in the dictionary. A user's inability to remember complex combinations of letters, numbers, and symbols often results in the password being written down, sometimes on a note stuck to the side of a workstation.
>
> Present systems face several problems: users dread frequent password changes, [and] frequent password changes with hard-to-remember passwords inevitably result in users surreptitiously writing down passwords, [which compromises security].

'658 Patent at 1:30–43.

The patent describes one prior-art product to make authentication easier. That product requires the user to possess a card that generates and displays an unpredictable, one-time access code that changes every minute. When logging in to the system, the user provides the code which can be verified by the system. *See id.* at 1:44–53.



*FIG. 1*

The patent teaches a system with similar benefits without requiring the user to carry such a card. As shown in FIG. 1 (above), a token server (116) running on a user authentication server (102) generates a random token in response to a user request (160) for a new password. The server (102) creates the new password based on a secret passcode known to the user and the token, and then sets the user's password as the new password in a user database (114). A communication module (118) transmits the token (156) to the user's personal communication device (106), such as a mobile phone. The user forms the password from the secret passcode and received token and submits the password to access the secure system (100). *See generally* '658 Patent at [57], 4:2–51.

The patent includes two independent claims that collectively include the five disputed terms. Claim 1 is directed to:

> 1. A method of authenticating a user on a first secure computer network, the user having a user account on said first secure computer network, the method comprising:
>
> associating the user with a personal communication device possessed by the user, said personal communication device in communication over a second network, wherein said second network is a cell phone network different from the first secure computer network;
>
> **receiving a request from the user for a token via the personal communication device, over the second network;**
>
> generating a new password for said first secure computer network based at least upon the token and a passcode, wherein the token is not known to the user and wherein the passcode is known to the user;
>
> setting a **password** associated with the user to be the new password;
>
> **activating access the user account on the first secure computer network;**

> transmitting the token to the personal communication device;
>
> receiving the **password** from the user via the first secure computer network; and
>
> deactivating access to the user account on the first secure computer network within a predetermined amount of time after said activating, such that said user account is not accessible through any password, via said first secure computer network.

'658 Patent at 11:43–57 (disputed terms bolded). Claim 5 is directed to a system that implements the method:

> 5. A user authentication system comprising:
>
> a computer processor;
>
> a user database configured to associate a user with a personal communication device possessed by the user, said personal communication device configured to communicate over a cell phone network with the user authentication system;
>
> a control module executed on the computer processor configured to create a new password based at least upon a token and a passcode, wherein the token is not known to the user and wherein the passcode is known to the user, the control module further configured to set a **password** associated with the user to be the new password;
>
> a communication module configured to transmit the token to the personal communication device through the cell phone network; and
>
> an authentication module configured to **receive the password from the user through a secure computer network**, said secure computer network being different from the cell phone network, wherein the user has an account on the secure computer network, wherein the authentication module **activates access to the account in response to the password** and deactivates the account within a predetermined amount of time after activating the account, such that said account is not accessible through any password via the se-

cure computer network.

*Id.* at 12:20–47 (disputed terms bolded). For each of the disputed terms, Dynapass seeks a "plain and ordinary meaning" construction. Defendants, on the other hand, propose specific language for each term.

### B. The *Chase* Litigation

The terms now at issue were previously construed in *Dynapass v. JP Morgan Chase & Co.*, No. 2:22-CV-00212-JRG-RSP (*Chase*). *See generally* Cl. Constr. Order, Dkt. No. 144-1. In *Chase*, the Court considered the central issues of whether (1) statements made by Dynapass during IPR proceedings gave rise to disclaimer, and (2) receiving the token and passcode separately literally meets the limitation of "receiving the password." *See id.* at 12–13 (construing "activates access to the account in response to the password" as "activates access to the account in response to the creation of the password."), 14–16 (concluding the plain language of the claim does not cover an embodiment that separately submits the passcode and token). The parties here present those same issues.

## II. GENERAL LEGAL STANDARDS

"[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). As such, if the parties dispute the scope of the claims, the court must determine their meaning. *See, e.g.*, *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1317 (Fed. Cir. 2007) (Gajarsa, J., concurring in part); *see also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), *aff'g*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc).

Claim construction, however, "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Rather, "[c]laim construction is a

matter of [resolving] disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims . . . ." *Id.* A court need not "repeat or restate every claim term in order to comply with the ruling that claim construction is for the court." *Id.*

When construing claims, "[t]here is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (citing *Phillips*, 415 F.3d at 1312–13). Courts must therefore "look to the words of the claims themselves . . . to define the scope of the patented invention." *Id.* (citations omitted). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1312). For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."). But for claim terms with less-apparent meanings, courts consider "those sources available to the public that show what a person of skill in the art would have understood

disputed claim language to mean . . . [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314.

## III. THE LEVEL OF ORDINARY SKILL IN THE ART

The level of ordinary skill in the art is the skill level of a hypothetical person who is presumed to have known the relevant art at the time of the invention. *In re GPAC*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). In resolving the appropriate level of ordinary skill, courts consider the types of and solutions to problems encountered in the art, the speed of innovation, the sophistication of the technology, and the education of workers active in the field. *Id.* Importantly, "[a] person of ordinary skill in the art is also a person of ordinary creativity, not an automaton." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).

Here, only Defendants propose an ordinary level of skill in the art. Specifically, Amazon asserts a skilled artisan "would have had at least (1) an undergraduate degree in electrical and computer engineering or a closely related field; and (2) two or more years of experience in security." Dkt. No. 144 at 5. Experian characterizes a skilled artisan as one who "would have had a bachelor's degree in computer science, management of information systems, or electrical engineering, or similar field, with one-to-two years of experience in the design, support, or implementation of systems requiring user authentication." *Id.* at 6. Defendants suggest "it makes no difference whether the Court adopts either Amazon's or Experian's definition" of a skilled artisan. *Id.* The Court agrees.

## IV. THE DISPUTED TERMS

### A. "activates access to the account in response to the password" (Claim 5)

| Dynapass's Construction | Amazon's Construction | Schwab's Construction |
|---|---|---|
| Plain and ordinary meaning | "activates an account in response to the creation of the password" | "activates access to the account in response to the creation of the password" |

In *Chase*, the Court considered two disputes about this phrase: (1) whether "activates access to the account" means "activates the account," and (2) whether "in response to the password" means "in response *to the creation* of the password." Cl. Constr. Order, Dkt. No. 144-1 at 10. With respect to the first issue, the *Chase* defendants argued to strike "access" from the phrase because the specification never refers to "activating access" to a user's account—only "activating" the account. *See id.* Regarding the second issue, the *Chase* defendants stressed that, in response to a petition for IPR by Unified Patents, Dynapass explained the "activating" taught by the cited reference was "not in response to receiving the password from the user." *See id.* The Court ultimately rejected the defendants' position on the first issue, but agreed "in response to the password" means "in response *to the creation* of the password." *Id.* at 12–13.

Here, only the first issue from *Chase* is in dispute, as all parties agree that "in response to the password" means "in response *to the creation* of the password." Dkt. No. 142 at 7 (noting that, "to the extent that the term requires construction," Dynapass agrees with the Court's construction from *Chase*); Dkt. No. 144 at 7 (noting Defendants' agreement "that the phrase 'in response to the password' means 'in response to creation of the password'"). Amazon, however, urges the position taken by the *Chase* defendants on the first issue—that "activating access to the account" means "activating the account."

Unlike in *Chase*, where the defendants suggested there isn't any difference in scope be-

tween "activating the account" and "activating access to the account," *see* Cl. Constr. Order, Dkt. No. 144-1 at 11, Amazon and Dynapass agree those phrases mean different things. *See* Dkt. No. 146 at 1 (Dynapass's assertion that "[a]ctivating access' is not the same as 'activates an account.' 'Activating access' means that someone is allowed to try to access an account."); Hr'g Tr., Dkt. No. 165 at 12:25–13:2 (noting Amazon's agreement "there is a real distinction between [the phrases]; they do have different meanings"). More specifically, Amazon and Dynapass agree an account must be activated before access can be granted. *See* Hr'g Tr., Dkt. No. 165 at 15:13–15 (Amazon's assertion that "if an account is inactive, you would not be able to activate access to that account without first activating the account"); *id.* at 27:22–24 (Dynapass's position that "the account being active is a prerequisite to activating access, but the account does not necessarily have to be deactivated beforehand"); *see also id.* at 31:7–13 (Dynapass's contention that "'activating access' means you can now log into the account" and "'activating an account' could potentially mean that it's active for some other purpose but the user is not allowed to access the account").

Arguing disclaimer, Amazon mainly relies on Dynapass's statements in its responses to petitions for *inter partes* review filed by Unified Patents and Experian. Dkt. No. 144 at 12. In those responses, Dynapass stated:

- "[T]he independent claims require activation of the user's account in response to creation of a new 'password' for the user." Prelim. Resp. (Unified Patents), Dkt. No. 144-8 at 1; Prelim. Resp. (Experian), Dkt. No. 144-12 at 1 (same);

- "The asserted references do not discuss activation of a user account." Prelim. Resp. (Unified Patents), Dkt. No. 144-8 at 2; Prelim. Resp. (Experian), Dkt. No. 144-12 at 2.

- "Petitioner disregards the requirement that activation occurs in response to creation of a new 'password' for the user." Prelim. Resp. (Unified Patents), Dkt. No.

144-8 at 2; Prelim. Resp. (Experian), Dkt. No. 144-12 at 2.

- "The claims also require that the user's account is deactivated 'within a predetermined amount of time' after the account is activated." Prelim. Resp. (Unified Patents), Dkt. No. 144-8 at 10; Prelim. Resp. (Experian), Dkt. No. 144-12 at 10.
- The claimed "process is depicted, for example, in Figure 5, which shows that the password is generated (step 510), the account is activated (step 512), then the token is transmitted to the user's personal communication device (step 514)." Prelim. Resp. (Unified Patents), Dkt. No. 144-8 at 30.
- "As a preliminary matter, Petitioner's argument fails because neither asserted reference discloses activating an account." *Id.* at 30–31.
- "Petitioner's argument rests on activation being [upon] 'receipt of the token,' without any corresponding evidence that the account is activated upon receipt of the token." *Id.* at 31.
- "[T]he independent claims require activation of the user's account" *Id.* at 1.
- "The claims also require that the user's account is deactivated 'within a predetermined amount of time' after the account is activated." *Id.* at 10.

Amazon considers these statements unequivocal and unambiguous restrictions of scope resulting from Dynapass's attempts to distinguish prior art, which it says is consistent with the specification never referring to "activating access" to an account. Dkt. No. 144 at 13.

The Court, however, sees no clear and unmistakable disclaimer on this record. For one, despite the parties' agreement to the contrary, the Court remains skeptical these phrases have different meanings, at least as Dynapass used them in its preliminary responses. Instead, the record suggests Dynapass used "activates the account" as shorthand for "activates access to the account." For example, in its preliminary response to Unified Patents' petition, Dynapass characterized Step 512 of Figure 5 as "activating the account." Prelim. Resp. (Unified Patents), Dkt. No. 144-8 at 30. Figure 5 shows Step 512 as "Set Password in User Database and Activate User ID," which is followed by transmitting the token to the user (Step 514), after which the user can ac-

cess the system (Step 516). '658 Patent at 9:34–59. That tracks the parties' explanation that "activating access to the account" means one can log into the account.

Similarly, Amazon points to Dynapass's statement that "Petitioner's argument fails because neither asserted reference discloses activating an account." Dkt. No. 144 at 12 (citing Prelim. Resp. (Unified Patents), Dkt. No. 144-8 at 30–31). But Dynapass followed that general statement with a more specific statement that "[t]he Petition fails to argue, let alone show, that either reference discloses *activating account access* in response to generation of the new 'password.'"). Prelim. Resp. (Unified Patents), Dkt. No. 144-8 at 30–31 (emphasis added). In other words, not only did the petitioner fail to show the asserted references do not activate access to the account, but they do not show activation in response to generating a new password.

As another example, Amazon points to a paragraph from the introduction of Dynapass's preliminary responses to both the Unified Patents and Experian IPRs: "The asserted references do not discuss activation of a user account. Putting that aside, Petitioner disregards the requirement that activation occurs in response to creation of a new 'password' for the user." Prelim. Resp. (Unified Patents), Dkt. No. 144-8 at 2; *see also* Prelim. Resp. (Experian), Dkt. No. 144-12 at 2 (same). But in both responses, Dynapass's arguments had little to do with any distinction between activating an account and activating access to an account, instead focusing on the timing of when the activation occurred. *See generally* Prelim. Resp. (Unified Patents), Dkt. No. 144-8 at 40–42 (arguing "Petitioner incorrectly relies on steps in the prior art that occur well after the claimed 'password' is created" and presenting three arguments about the timing of the "activation"); *see generally* Prelim. Resp. (Experian), Dkt. No. 144-12 at 39–40 (arguing "the Petition incorrectly identifies a process that occurs after *Sormunen* receives the alleged 'password' from the user, unlike claim 5, which requires that the 'authentication module' activates access to the

account in response to creation of the new 'password,' not in response to receiving the 'password' from the user").

Amazon's argument would have more force if the cited references disclosed "activating an account" (as it understands the meaning of that term), but that does not appear to be the case. *See generally* Pet. for IPR (Unified Patents), Dkt. No. 144-9 at 41–46; *see also* Dkt. No. 165 at 33:12–17 ("I don't think that was something that was covered in the IPR as directly[.]"). Instead, Unified Patents focused on "in response to the password," arguing that phrase means in response to *receiving* the password. *See* Pet. for IPR (Unified Patents), Dkt. No. 144-9 at 41 ("*Veneklase* discloses that the user 404 'sends this password or pseudo-random code back to computer 402 where it is compared within the software subroutine module denoted as "code compare" 416 in Figure 6' and '[i]f the comparison yields a match, the user 404 is allowed access to computer 402[.]'").

The patent is about authentication, and nothing in the specification discusses "activating an account" in the sense of making it active for some purpose other than accessing a computer system. In a patent about using a password to access a system, Amazon's position would effectively remove the notion of "access" from the claims and instead cover making accounts active for other reasons. The Court sees no clear and unmistakable basis for doing so, and therefore adopts the same construction for this phrase as it did in *Chase*: "activates access to the account in response to the creation of the password."

### B. "activating access the user account on the first secure computer network" (Claim 1)

| Dynapass's Construction | Amazon's and Schwab's Construction |
| --- | --- |
| Plain and ordinary meaning | "activating a user account on the first secure computer network in response to the creation of the password" |

The parties' disputes are similar to the dispute over the "activates access . . ." phrase from Claim 5. In *Chase*, the defendants asserted this phrase should have an analogous construction to the "activates access" phrase based on Dynapass's IPR statements, including the requirement that activating access to the account occur "in response to the creation of the password." Cl. Constr. Order, Dkt. No. 144-1 at 14. The Court disagreed, concluding Dynapass made only a general response to an equally general argument by Unified. *Id*. The Court also noted Claim 1's lack of the phrase "in response to," and held the lack of specificity in both Unified Patents' and Dynapass's IPR arguments did not amount to clear disclaimer. *Id.* In the end, the Court gave this phrase a "plain and ordinary meaning" construction. *Id.*

Here, Defendants base their position on new statements made by Dynapass during the Experian IPR:

- "[T]he independent claims require activation of the user's account in response to creation of a new 'password' for the user." Prelim. Resp. (Experian), Dkt. No. 144-12 at 1.

- "Petitioner disregards the requirement that activation occurs in response to creation of a new 'password' for the user." *Id.* at 2.

- "Based on both logic and the express ordering of the limitations in claim 1, claim element [1.f] is executed <u>after</u> the claimed 'password' is generated 'based at least upon a token and a passcode,' and thus claim element [1.f] is executed <u>after</u> the claimed 'token' is generated." *Id.* at 27 (emphasis in original).

- "That interpretation is also consistent with the specification of the '658 Patent. For example, in Figure 5, the token is generated first (step 508), the password is generated (step 510) <u>after</u> the token is generated, and the account is activated (step 512) <u>after</u> the password is generated." *Id.* (emphasis in original).

- "As also shown in Fig. 5, the account is activated (step 512) <u>before both</u> transmitting the token to the personal communication device (step 514) and receiving the password from the user (step 516)." *Id.* at 28 (emphasis in original).

- "But Petitioner provides no evidence that the time point (the identified 'activating access [to] the user account') is after generation of *Sormunen's* 'PIN' for the bank/credit card (the identified 'token'), as claim 1 requires." *Id.* at 29 (emphasis in original).

- "Further, as discussed above, *Sormunen* fails to disclose generating a password based on *Sormunen's* 'PIN' for the bank/credit card (the identified 'token'), as claim 1 requires. Accordingly, *Sormunen* fails to disclose generating the claimed 'password' and thus cannot disclose executing claim element [1.f] after generating the claimed 'password,' as claim 1 requires." *Id.*

- "Activating account access in response to generation of the new 'password' is depicted in steps 510 and 512 of Figure 5 (as highlighted in red in Figure 5)." *Id.* at 32.

From these statements, Amazon and Schwab conclude "Dynapass's repeated assertions make clear that 'activating a user account' occurs 'in response to the creation of the password' for claim 1." Dkt. No. 144 at 15.

Again, the parties present two issues: (1) whether disclaimer restricts the scope of "activating access," and (2) whether the "activating" must be in response to creation of the new password. On the first issue, the Court declines to construe "activating access" as "activating" for the same reasons explained above.

On the second issue, in its preliminary response to Experian's petition for IPR, Dynapass clearly and unmistakably explained:

> Based on both logic and the express ordering of the limitations in claim 1, claim element [1.f] is executed after the claimed 'password' is generated 'based at least upon a token and a passcode,' and thus claim element [1.f] is executed after the claimed 'token' is generated. . . . That interpretation is also consistent with the specification of the '658 Patent. For example, in Figure 5, the token is generated first (step 508), the password is generated (step 510) after the token is generated, and the account is activated (step 512) after the password is generated[.]

Prelim. Resp. (Experian), Dkt. No. 144-12 at 27 (brackets in original). Accordingly, the Court

construes this phrase as "activating access to the user account on the first secure computer network after the creation of the password."

### C. "password" (Claim 1, 2, 5, 6)

| Plaintiff's Proposal | Defendants' Construction |
| --- | --- |
| Plain and ordinary meaning | "an unhashed or a hashed password" |

Defendants assert is lexicography. Dkt. No. 144 at 17 (quoting '658 Patent at 7:24–27). They propose a construction that includes the term itself, and the additional language includes the universe of options concerning hashing the password—that is, it is either unhashed or hashed, cannot be both, and there are no other possibilities. Thus, Defendants' construction seems to not limit the scope of password, although Dynapass accuses Defendants of doing just that. Dkt. No. 142 at 15.

Defendants' concerns are tied to Dynapass's assertions in *Chase* that separately sending or receiving the passcode and token could literally meet the limitation of sending or receiving the password. *See* Dkt. No. 144 at 17. According to Defendants, despite the Court's prior rejection of that notion, Dynapass continues to assert "receiving the password" includes separately receiving *the components* of the password. Dkt. No. 144 at 19. As it did in *Chase*, the Court rejects that notion, but that does not mandate the construction now urged by Defendants. Nor does column 7, lines 24–27 define "password." Accordingly, the Court will give this term a "plain and ordinary meaning" construction.

### D. "receive the password from the user through a secure computer network" (Claim 5); "receiving the password from the user via the first secure computer network" (Claim 1)

| Dynapass's Construction | Amazon's and Experian's Construction | Schwab's Construction |
|---|---|---|
| Plain and ordinary meaning | "[receive/receiving] a combination of the token and passcode forming the password from the user in a single submission [through/via] [a/the first] secure computer network" | Plain and ordinary meaning (i.e., the claim does not cover an embodiment that submits the passcode and token separately) |

This dispute revisits the main dispute about "password" from *Chase*—whether receiving the token and passcode separately literally meets the limitation of "receiving the password." Although Defendants suggest Dynapass is surreptitiously trying to circumvent the Court's prior constructions, Dynapass is upfront about its intentions and disagreement with the Court's decision in *Chase*. *See* Dkt. No. 144 at 6 ("Dynapass respectfully disagrees with the Court's prior construction of the term, and Dynapass here preserves its right to appeal the prior construction to the extent necessary.").

Dynapass presents the same arguments and evidence already considered by the Court in *Chase*. For the same reasons set forth in the *Chase* Claim Construction Order, the Court again holds receiving the token and passcode separately does not literally meet the limitation of "receiving the password." *See* Cl. Constr. Order, Dkt. No. 144-1 at 15–16. Because that resolves the dispute and limits the parties and their experts at trial, the Court need not adopt Defendants' constructions and will give these phrases "plain and ordinary meaning" constructions.

## V. CONCLUSION

| Disputed Term | The Court's Construction |
|---|---|
| "activates access to the account in response to the password" (Claim 5) | "activates access to the account in response to the creation of the password" |
| "activating access the user account on the first secure computer network" (Claim 1) | "activating access to the user account on the first secure computer network after the creation of the password" |
| "password" (Claims 1, 2, 5, 6) | Plain and ordinary meaning |
| "receive the password from the user through a secure computer network" (Claim 5) | Plain and ordinary meaning |
| "receiving the password from the user via the first secure computer network" (Claim 1) | Plain and ordinary meaning |

The Court **ORDERS** each party not to refer, directly or indirectly, to its own or any other party's claim construction positions in the presence of the jury. Likewise, the Court **ORDERS** the parties to refrain from mentioning any part of this opinion, other than the actual positions adopted by the Court, in the presence of the jury. Neither party may take a position before the jury that contradicts the Court's reasoning in this opinion. Any reference to claim construction proceedings is limited to informing the jury of the positions adopted by the Court.

**SIGNED this 29th day of May, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE